UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHANNON EARL TROCHE,
    Plaintiff,

vs.

MICHAEL CRABTREE,
    Defendant.

Case No. 1:12-cv-176

Speigel, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this prisoner civil rights action under 42 U.S.C. § 1983 alleging violations of his constitutional rights by defendants Correctional Officer Michael Crabtree and Warden Donald Morgan while plaintiff was an inmate at the Southern Ohio Correctional Facility (SOCF).[1] (Doc. 23). This matter is before the Court on defendant Crabtree's[2] motion for summary judgment (Doc. 45), plaintiff's memorandum in opposition (Doc. 50), and defendant Crabtree's reply memorandum (Doc. 53).

## I. Background

Plaintiff alleges defendant Crabtree, a Correctional Officer at the Southern Ohio Correctional Facility (SOCF), physically assaulted him on or around August 20, 2011, in violation of his Eight Amendment rights to be free from the use of excessive force and cruel and unusual punishment. Plaintiff also alleges that he was placed in segregation after the incident with defendant Crabtree where he was deprived food and otherwise mistreated by SOCF staff in violation of his Fourteenth Amendment right to due process. *See* Doc. 23.

Defendant Crabtree moves for summary judgment asserting that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit and, consequently, he is entitled to judgment as a matter of law and plaintiff's suit should be dismissed pursuant to the Prison

_____

[1]Plaintiff initiated this action on a pro se basis but is currently represented by counsel pursuant to the District Court's appointment of an attorney. *See* Doc. 14.

Litigation Reform Act (PLRA), 42 U.SC. § 1997e(a). (Doc. 45). In support, defendant Crabtree

has submitted the affidavit of Linnea Mahlman, the Inspector of Institutional Services for SOCF.

(Doc. 45, Ex. 1, Mahlman Declaration). Ms. Mahlman attests that every SOCF inmate is given

both written and oral instructions on the inmate grievance procedure and that informal complaint

forms are available to all inmates, even those in segregation. (*Id.*, ¶¶ 7-8). As the Inspector of

Institutional Services, Ms. Mahlman is responsible for investigating formal grievances filed by

SOCF inmates and attests that plaintiff did not file any proper informal complaints or other

grievance forms regarding the alleged incident of August 20, 2011, or any other aspect of his

conditions of confinement. (*Id.*, ¶¶ 2, 9). Ms. Mahlman further attests that on August 23, 2011,

she received an informal complaint from plaintiff that defendant Crabtree assaulted him and that

other SOCF employees had not fed him since placing him in segregation. (*Id.*, ¶¶ 10-11). Ms.

Mahlman also received an informal complaint from plaintiff on August 29, 2011, regarding his

allegations that SOCF employees had tampered with video evidence of the alleged assault. (*Id.*).

Ms. Mahlman attests that these complaints were improperly submitted to her and, pursuant to the

Ohio Department of Rehabilitation and Correction (ODRC) grievance procedure, plaintiff should

have filed them with the direct supervisor of the staff member or the department most directly

responsible over the subject matter of the complaint. (*Id.*, ¶ 12). Ms. Mahlman further attests

that she has the authority to waive the filing of informal complaints as the Inspector of

Institutional Services for SOCF under certain circumstances, including situations where an

inmate alleges an unreported use of force incident. (*Id.*, ¶ 13). Ms. Mahlman states that she

investigated plaintiff's August 23, 2011 complaint but did not waive the ODRC requirement that

he file properly file the informal complaint because the incident had been reported and was

---

[2]Plaintiff's claims against Warden Morgan have been dismissed. *See* Docs. 31, 41.

pending an official investigation. (*Id.*, ¶ 14). In response to the August 23, 2011 complaint, Ms. Mahlman notified plaintiff that she does not handle informal complaints. (*Id.*). Ms. Mahlman attests that she did not record the informal complaints as part of plaintiff's grievance history because they were not properly submitted, but she scanned and saved them per standard operating procedures. (*Id.*, ¶ 15). Attached to Ms. Mahlman's affidavit are copies of the August 23 and 29, 2011 informal complaints. (Doc. 45, Ex. 1 at 5-6). The August 23, 2009 informal complaint was submitted on August 19, 2011, by "S. Trouché" and provides "On 8/19/11 C/O Crabtree attacked me. Since being placed in J-2 C/O's have not fed me. And have threatened my life." (*Id.* at 5). On August 23, 2011, Ms. Mahlman responded "[Inspector of Institutional Services] does not answer [informal complaint resolutions] & I find no merit."[3] (*Id.*).

In response, plaintiff argues that summary judgment is inappropriate because he attempted to exhaust his administrative remedies by utilizing the ODRC grievance process. Plaintiff maintains, however, that SOCF officials failed to respond to his grievances and "pleas for help," which effectively deprived him of the ability to exhaust his administrative remedies. In support, plaintiff submits his own affidavit. *See* Doc. 50, Ex. 1, Plaintiff's Declaration. Plaintiff declares that he is familiar with the ODRC grievance procedure and has used it in the past. (*Id.*, ¶¶ 4-5). Plaintiff attests that on August 20, 2011, he submitted an Informal Complaint Resolution form (ICR) to the Shift Supervisor or Captain that was on duty regarding defendant Crabtree's alleged assault in compliance with the first step of the ODRC grievance process but received no response. (*Id.*, ¶¶ 7-9). Plaintiff states he grieved to the Inspector of Institutional Services approximately one week after submitting his initial ICR as required by the second step of the ODRC grievance process but again received no response. (*Id.*, ¶¶ 10-11). Plaintiff attests

---

[3] Ms. Mahlman further responded: This was a Reported Use of Force RIB Case # 11-003456. I have reviewed DVR of the incident as well as I also watched you accept and eat breakfast on 8/23/11 at 7:20 a.m." (*Id.*).

he contacted the Inspector of Institutional Services again and included the goldenrod copy from

his original ICR form and submitted additional kites to SOCF officials, but still received no

response. (*Id.*, ¶¶ 12-13). Plaintiff further attests that after receiving no response to any of his

complaints or grievances, he did not pursue step three of the ODRC grievance process. (*Id.*, ¶

16). Plaintiff states that he does not have copies of any of the documents he submitted. (*Id.*, ¶

17). Further, plaintiff attests that he did not write the ICRs attached to Ms. Mahlman's affidavit

and does not know who authored them or why. (*Id.*, ¶¶ 18-19). He states that the ICR dated

August 19, 2011, misspells his last name as "Trouché," when in fact his last name is spelled

"Troché." (*Id.*, ¶ 21). He also states that the ICR contains the wrong date of the alleged assault

by defendant Crabtree. (*Id.*, ¶ 22).

Defendant Crabtree replies that plaintiff's self-serving affidavit, absent supporting

documentation or specific factual detail, is insufficient to overcome defendant Crabtree's

properly supported motion for summary judgment. Defendant Crabtree further maintains that

even if the affidavit is fully credited, he is entitled to summary judgment given plaintiff's sworn

statement that he did not complete the ODRC grievance process prior to filing the instant

lawsuit. Because the undisputed evidence establishes that plaintiff did not exhaust his

administrative remedies before filing his federal claims, defendant Crabtree contends he is

entitled to summary judgment. (Doc. 53). In support, defendant Crabtree submits a second

affidavit from Ms. Mahlman wherein she attests that plaintiff submitted two kites to her office,

one on August 22, 2011, and the other on November 21, 2011, but never requested a Notice of

Grievance form (a formal grievance form), which is a requisite part of the grievance process.

(Doc. 53, Ex. 1, ¶¶ 5-10, Second Mahlman Declaration).

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (quoting *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it. . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex*, 477 U.S. at 323-24. The moving party need not support his motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex*, 477 U.S. at 325). Nor must the Court

search the entire record for material issues of fact. *Street*, 886 F.2d at 1479-80. The Court need

only determine "whether the evidence presents a sufficient disagreement to require submission to

a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*,

477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial

Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### III. Resolution

Exhaustion of administrative remedies "is mandatory under the PLRA and . . .

unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing

*Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other

correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42

U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all

inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion"

of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To properly exhaust a claim,

prisoners must "tak[e] advantage of each step the prison holds out for resolving the claim

internally and by following the 'critical procedural rules' of the prison's grievance process to

permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the

first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*,

548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines . .

. ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair

6

notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006), *cert. denied*, 549 U.S. 1245 (2007)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member within fourteen days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(K)(1). Second, if the inmate is unsatisfied with the response to his informal complaint he may file a formal grievance with the inspector of institutional services at his institution of confinement. Ohio Admin. Code § 5120-9-31(K)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within fourteen calendar days of receipt of the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the office of the chief inspector within fourteen days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(K)(3).

Defendant Crabtree is entitled to summary judgment because there is no genuine dispute of material fact about whether plaintiff pursued step three of the ODRC grievance process and, therefore, failed to exhaust his administrative remedies.[4] Under step three, plaintiff was required

---

[4]Defendant Crabtree maintains he is entitled to summary judgment because plaintiff did not submit proper ICRs and proceeded no further than the first step of the ODRC grievance process. *See* Doc. 45 at 6. This argument is premised on the evidence submitted in connection with Ms. Mahlman's affidavit, which purportedly shows that plaintiff incorrectly submitted his ICRs to Ms. Mahlman. *See* Doc. 45, Ex. 1 at 5-6. However, as noted above, plaintiff attests that he did not complete the ICR forms attached to Ms. Mahlman's affidavit as evidenced by the facts that the August 19, 2011 ICR form provides an incorrect date for the alleged assault and an incorrect spelling of his last name. *See* Plaintiff's Declaration, ¶¶ 18, 21-22. Plaintiff's affidavit details his efforts to follow up on his unanswered ICR, including submitting a formal grievance and the goldenrod copy of his ICR to the Inspector of Institutional Services. (*Id.*, ¶¶ 8-15). Further, plaintiff attests that he submitted his ICR to the shift supervisor on duty, however, the ICR form submitted by defendant Crabtree is marked as received by Ms. Mahlman. *See* Plaintiff's Declaration, ¶ 8; Doc. 45, Ex. 1 at 5. Plaintiff's detailed affidavit is sufficient to create a genuine dispute

to appeal to the office of the chief inspector within two weeks of receiving a response to his step two formal grievance. Ohio Admin. Code § 5120-9-31(K)(3). The chief inspector may waive the time limit for appeal for good cause shown. *Id.* Assuming plaintiff did not receive a response to his informal complaint or grievance as he alleges, nothing prevented plaintiff from pursuing step three of the inmate grievance procedure and seeking a waiver of the time limits. Plaintiff acknowledges that he did not pursue step three of the grievance procedure. (Plaintiff's Declaration, ¶ 16). As it is undisputed that plaintiff did not file an appeal to the chief inspector before he filed this lawsuit, he has failed to exhaust his administrative remedies under the PLRA and defendant Crabtree is entitled to summary judgment. *See Harris v. Battle*, No. 1:12-cv-940, 2013 WL 5389240, at *5 (S.D. Ohio Sept. 25, 2013) (Report and Recommendation), *adopted*, 2013 WL 5755416 (S.D. Ohio Oct. 23, 2013) (granting summary judgment in favor of defendant where undisputed facts established that plaintiff had failed to complete step three of the ODRC grievance process).[5]

To the extent plaintiff contends he could not complete the grievance process because SOCF officials failed to timely respond at steps one and two, making further administrative remedies unavailable or futile, this argument is unavailing. "To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available" or the procedure is futile. *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (citing *Brock v. Kenton Cty.*, 93 F. App'x 793, 798 (6th Cir. 2004); *Pack v. Martin*, 174 F. App'x 256, 262 (6th Cir. 2006)). Plaintiff was therefore required to continue to the third step of the grievance process. *Id. See also Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)

---

of material fact as to whether plaintiff exhausted his administrative remedies at steps one and two of the ODRC grievance process and, accordingly, defendant Crabtree is not entitled to summary judgment on this basis.

[5] Notably, unlike plaintiff here, the *Harris* plaintiff had attempted to pursue the third step of the grievance process but because he did so imperfectly, his efforts were deemed non-exhaustive. *Id.* at *5.

(citation omitted) ("an inmate cannot simply fail to file a grievance or *abandon the process before completion* and claim that he has exhausted his remedies or that it is futile for him to do so. . . .") (emphasis added). Plaintiff should have filed an appeal to the ODRC chief inspector under the third step of the inmate grievance procedure despite the alleged failure of SOCF prison officials to respond to his earlier filings. Plaintiff's failure in this regard establishes that he did not exhaust his administrative remedies.

Nevertheless, plaintiff contends that the Sixth Circuit has determined that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." (Doc. 50 at 3, citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) and *Boyd v. Corr. Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004)). Both cases are distinguishable. The inmate in *Risher* actually filed an appeal to the Central Office even though he did not have the Regional Director's response to append thereto as required by the prison grievance process. The Sixth Circuit recognized that the inmate attempted to follow the regulations by: treating the Regional Director's failure to respond as a denial, appealing to the Central Office, and explaining to the Central Office that he had received no response to the previous tier of review. This showing was sufficient to show exhaustion. In *Boyd*, the Sixth Circuit found exhaustion of the prison grievance procedure where "prison officials totally failed to respond to the grievance" and the plaintiff was foreclosed from proceeding with the prison appeal process and exhausting available remedies. *Boyd*, 380 F.3d at 996. *See also Malick v. Campbell*, No. 3:06-cv-156, 2008 WL 314383, at *3 n.3 (W.D. Ky. Feb. 4, 2008) (distinguishing *Boyd* and finding that the prisoner-plaintiff was not excused from completing the grievance process as he was able to proceed despite inaction by corrections officials).

Although the Sixth Circuit has determined that a prison grievance procedure will be

deemed exhausted when prison officials take some action preventing an inmate from completing

the process, *see Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014)

(excusing prisoner's lack of complete compliance with "strict rule" of exhaustion where prison

official's threats and actions would "deter a person of ordinary firmness from [continuing with

the grievance process]"), the Sixth Circuit "requires an inmate to make 'affirmative efforts to

comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were

sufficient under the circumstances.'" *Risher*, 639 F.3d at 240 (quoting *Napier*, 636 F.3d at 224

(internal quotation marks and citation omitted)).  Here, nothing prevented plaintiff from

considering the alleged lack of a response to his informal complaints and grievances as denials of

his requests and then appealing to the ODRC chief inspector.  Because plaintiff was not

prohibited from pursuing the third step of the ODRC grievance process but simply opted not to

after allegedly receiving no response to his step one and two filings, *see* Plaintiff's Declaration, ¶

16, his efforts to exhaust were not sufficient under the circumstances. *Cf. Taylor v. McWeeney*,

No. 1:05-cv-155, 2005 WL 1378808 (S.D. Ohio May 27, 2005) (Report and Recommendation),

*adopted*, (S.D. Ohio Oct. 27, 2005).[6]

  Accordingly, there is no genuine dispute as to any material fact regarding plaintiff's non-

exhaustion of his administrative remedies and defendant Crabtree is entitled to summary

judgment.

---

   [6]In *Taylor*, the Court denied prison officials' motion to dismiss for failure to exhaust administrative remedies despite the fact that the plaintiff filed his lawsuit prior to receiving a response from the chief inspector as required under step three of the ODRC grievance process. *Id.*, at *2.  The *Taylor* plaintiff had fully complied with the grievance process through step three by submitting an appeal to the chief inspector, who then had thirty days to respond to the appeal. *Id.* (citing Ohio Admin. Code § 5120-31-9(J)(3)).  The chief inspector notified the plaintiff that he required additional time to issue a response to the appeal and several months passed without a decision.  The plaintiff then filed his complaint.  The Court found that under these circumstances, the plaintiff had done "everything he could to exhaust his 'available' administrative remedies and [that he] was well within his rights to file his complaint in federal court." *Id.*

**IV. Conclusion**

For the above reasons, the undersigned recommends that defendant Crabtree's motion for summary judgment (Doc. 45) be **GRANTED** and that this case be dismissed on the docket of the Court.

Date: 1/12/15

Karen L. Litkovitz
United States Magistrate Judge

11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SHANNON EARL TROCHE,                                    Case No. 1:12-cv-176
     Plaintiff,

                                     Speigel, J.
     vs.                                                  Litkovitz, M.J.

MICHAEL CRABTREE,
     Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).